# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GUY D. MASI,

        Plaintiff,        CIVIL ACTION NO. 06-CV-11592-DT

 VS.                             DISTRICT JUDGE SEAN F. COX

DTE ENERGY CO., et al.,       MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL FINAL DRAFT OF "MY STORY"

This matter comes before the Court on Defendants' Motion to Compel Final Draft of "My Story" filed on May 31, 2007. (Docket no. 41). Plaintiff filed a Response brief on June 15, 2007. (Docket no. 48). Defendants filed a Reply brief on June 26, 2007. (Docket no. 51). The Court heard oral argument from counsel on July 9, 2007. This motion has been referred to the undersigned for decision. (Docket no. 43). The matter is now ready for ruling.

## I.    Facts and Contentions of the Parties

This is an action alleging age discrimination under federal and state law. Plaintiff alleges in his Complaint that he became an employee at a facility known as the "coke plant" in 1976 and in 2004 was employed by U.S. Steel at this facility. In 2004 Defendant DTE was to completely take over the facility from U.S. Steel. Plaintiff and other employees not hired by DTE were to be permanently laid off. Plaintiff alleges that he applied to be hired by DTE in the Summer or Fall of 2004. On or about October 4, 2004, Plaintiff alleges that DTE informed him that he was not being rehired.

The parties disagree over whether Plaintiff must produce the final draft of "My Story." Plaintiff wrote "My Story," a 15-page document recording Plaintiff's thoughts and various conversations with Plaintiff's supervisors, regarding whether Plaintiff would be allowed to keep his job at the facility. Many of the individuals about which Plaintiff wrote are named as individual Defendants.

Plaintiff wrote an initial draft of "My Story" in September and October of 2004 and gave this draft to his union. This draft is attached as an exhibit to Defendants' Motion. Defendants obtained a copy of this first draft by subpoenaing it from Plaintiff's union. Defendants used this draft to question Plaintiff during his deposition in May 2007. Some time after Plaintiff wrote this first draft, he wrote the final draft of "My Story" and gave a copy to counsel. During the July 9 hearing, Plaintiff's counsel stated that the final draft was likely prepared between November 2004 and January 2005. The most often cited difference between the two versions is that the final draft contains some comments allegedly made by Defendant Jere (the coke plant manager) that the first draft omitted. Plaintiff suggested in his deposition that 90% of the content of the final draft is in the initial draft. (Docket no. 41 at 15).

Defendants served a Request for Production on Plaintiff in August 2006 seeking each document including "notes . . . diaries . . . which in any manner relate to, concern, touch upon or pertain to . . . any conversations or communications between Plaintiff and any other person (including Defendants and representative of Defendants) or other entity concerning any of the subjects raised by Plaintiff's allegations regarding the Defendants." (Docket no. 41, ex. 1 at 3-4). Plaintiff responded to this request on February 26, 2007 by objecting and listing the attorney-client

2

privilege and the work product privilege. (*Id*. ex. 2 at 6). Plaintiff did not produce either version of "My Story" and did not produce a privilege log.

Defendants argue that Plaintiff must produce the final draft of "My Story" because (1) Plaintiff waived the attorney-client privilege by disclosing "My Story" to his union which waived the privilege not only for the initial draft but also for the final draft; (2) Plaintiff waived the privilege when he testified about the substance of the final draft during his deposition; and (3) Plaintiff waived any privilege by failing to disclose its existence in response to the production request quoted above. Defendants also argue that Plaintiff has not established that the work product doctrine applies to the final draft.

Plaintiff responds by arguing that the first draft of "My Story" was not privileged under either theory and that he never claimed that it was privileged. Therefore, Plaintiff contends that the case law relied upon by Defendants–specifically that waiver of the attorney-client privilege on the first draft of a protected document waives the privilege as to final drafts on the same subject matter–is inapplicable in this case. Plaintiff also contends that his deposition testimony about the contents of the final draft, and specifically the statements of Defendant Jere, is too limited to waive any privilege. Finally, Plaintiff argues that he did not waive a privilege by failing to file a privilege log.

## II.     Governing Law

Federal Rule of Civil Procedure 37(a) provides that a court may compel the disclosure or discovery of documents improperly withheld after a request is made under Rule 34. Under Fed. R. Civ. P. 26(b), parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(5) prescribes the steps a party must take if he

3

withholds information otherwise discoverable based on a claim of privilege or that the information is protected by the work product doctrine. Plaintiff has the burden of showing that both the attorney-client privilege and the work product doctrine apply. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (party asserting work product doctrine bears burden of establishing that documents were prepared "in anticipation of litigation"); *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (burden of establishing attorney-client privilege lies with person asserting it).

### III. Attorney-Client Privilege

Plaintiff does not dispute that he had the duty to produce any version of "My Story" that he had possession, custody, or control over pursuant to Defendant's Request for Production quoted above, unless the version was privileged. *See* Fed. R. Civ. P. 26(b). Plaintiff's counsel contends that he had no knowledge of the first draft of "My Story" until Defendants deposed Plaintiff which occurred after counsel had responded to Defendants' discovery request. Counsel further believed that the final version, of which he was aware at the time, was privileged.[1]

Plaintiff's alleged failure to advise his attorney about the existence of the first draft of "My Story" may explain why it was not produced pursuant to Defendant's discovery request. However, this alleged failure to communicate does not justify Plaintiff's failure to produce this draft in discovery. He must accept the consequences of this violation of the discovery rules and in this case one such consequence is his being held to his counsel's assertion of privilege for any responsive documents including that first draft.

Plaintiff also argues that he had no duty to produce the first draft of "My Story" because it was not in his possession, custody or control. He contends that by the time Defendants made their

---

[1] Defendants do not argue that the attorney-client privilege never attached to the final draft of "My Story." Therefore, the Court considers whether the privilege, assuming that it attached, was later waived.

4

request he had given the original document to his union and did not retain a copy. Although Plaintiff's complete deposition testimony was not submitted to the Court, the parties at the July 9 hearing agreed that Plaintiff testified during his deposition that he made handwritten notes and that his daughter typed these notes into the draft Plaintiff submitted to his union. Plaintiff's daughter typed them on a computer in Plaintiff's home, according to Plaintiff's counsel.

The Court finds that Plaintiff had sufficient control over the first draft of "My Story" such that he should have produced it pursuant to Defendants' discovery request. First, Defendants were able to obtain a copy of the first draft from Plaintiff's union. Plaintiff has made no showing that he could not also have obtained a copy from his union. Moreover, according to the parties, Plaintiff testified during his deposition that the first draft was created on his home computer. Plaintiff created the final draft based on this first draft and included 90% of the content of the first draft. The Court concludes that at least an electronic copy of that first draft was under the control of Plaintiff at the time Defendants made their discovery request. Plaintiff therefore had the duty to produce the first draft of "My Story" unless it was privileged. Plaintiff's counsel asserted the attorney-client privilege in Plaintiff's Response to Defendants' Requests for Production, believing that the final draft was the only draft in existence and that it was privileged.. The Court therefore finds that for waiver purposes Plaintiff should be held to counsel's assertion that any document responsive to the discovery request that was not produced was subject to the attorney-client privilege.

When a party discloses a document which is protected by the attorney-client privilege to a third-party, the party waives the attorney-client privilege on any revisions or later drafts of the document on the same subject matter as the earlier versions. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (waiver applies to all other communications relating to the

same subject matter); *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (scope of waiver turns on scope of disclosure and inquiry is whether disclosure involves same subject matter as desired testimony); *General Electric Co. v. Johnson*, 2006 WL 2616187 at *18-*19 (D.D.C. Sept. 12, 2006) (finding waiver as to all drafts and revisions of disclosed documents on same subject matter).

The subject matter of the first draft of "My Story" is Plaintiff's conversations and communications regarding his job performance and the possibility of his retention at the coke plant with other employees, and especially the supervisors, at the plant. The subject matter of the final draft of "My Story" is the same as the first draft. Accordingly, Plaintiff waived the attorney-client privilege on the final draft of "My Story" when he disclosed the first draft to his union.[2]

## IV. Work Product Doctrine

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3) which states that a party may obtain discovery of documents otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The Sixth Circuit has held that the "because of" test is the standard for determining whether documents were prepared "in anticipation of litigation." *Roxworthy*, 457 F.3d at 593. Documents prepared in the normal course of business or for other non-litigation purposes are not covered. *Id*. A document is not covered if "it would have been prepared in substantially the same manner

---

[2] Given this determination, the Court sees no need to address Defendants' alternative arguments regarding waiver.

irrespective of the anticipated litigation." *Id*. at 593-94. There is a subjective and objective component to the inquiry. *Id*.

Plaintiff bears the burden of showing that the document was prepared "in anticipation of litigation." *Roxworthy*, 457 F.3d at 593. A party may carry this burden by introducing evidence such as affidavits explaining why the document was prepared. *See id*. at 595. Defendants argue that Plaintiff has not produced evidence showing that this doctrine applies to the final draft of "My Story." The Court agrees that Plaintiff has failed to carry his burden. Plaintiff has not submitted any affidavits describing the preparation of the final draft. In his deposition testimony, Plaintiff replied in the affirmative when opposing counsel asked him if "there was an updated version that you then provided to your attorney?" However, the fact that Plaintiff gave the final draft to his attorney does not show that the final draft was prepared "because of" anticipated litigation. Further, Plaintiff testified during his deposition that he wrote his first draft of "My Story" for himself. (Docket no. 41, ex. 4). Although counsel argued during the July 9 hearing that he asked Plaintiff for the final draft so that counsel could evaluate Plaintiff's case, counsel failed to show that such evidence is reflected in any affidavit or deposition testimony. Moreover, even if counsel asked for the final draft for case evaluation purposes, the Court is not convinced that this causes the final draft to come under the protection of the work product doctrine. Plaintiff has failed to show that the final draft was prepared "because of" anticipated litigation.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Final Draft of "My Story" (docket no. 41) is **GRANTED**.

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: July 10, 2007

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon Counsel of Record on this date.

Dated: July 10, 2007

s/ Lisa C. Bartlett
Courtroom Deputy