UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUY D. MASI

    Plaintiff,

v.                                                                                                                      Case No. 06-11592
                                                                                                             Hon. Sean F. Cox

DTE COKE OPERATIONS, LLC;
GARY GROSS; BILL WETZEL; TOM JERE;
CHRIS CECOTTE; and BILL BACKEN,

    Defendants.
_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for summary judgment. Both parties have briefed the issues and a hearing was held September 13, 2007. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. The Motion is granted with respect to Defendants Bill Wetzel; Tom Jere; Chris Cecotte; and Bill Becken. Defendant Gary Gross is entitled to summary judgment on the ADEA claim only. The Motion is denied with respect to Defendant DTE Coke Operations, LLC; and Defendant Gary Gross on the ELCRA claim.

### I. BACKGROUND

This action arises out of alleged employment discrimination when Defendant DTE refused to re-hire Plaintiff. Plaintiff was employed at the Coke Battery plant on Zug Island in River Rouge, Michigan from 1976-2004. In 2004, DTE took over the Coke Battery from U.S. Steel. U.S. Steel employees not selected for rehire by DTE were to be permanently laid off.

1

The Coke Battery processes coal for use in making iron and steel. Hazardous gases and liquids, including tar, are produced as a by-product of the process. Plaintiff worked in the by-product processing area. Plaintiff was a "crew coordinator," which required him to lead a crew of by-product operators. In May 2004, Plaintiff was working in the control room monitoring computers. According to Defendants, Plaintiff failed to leave the control room and go into "the field" when tar rose to dangerous levels. As a result, tar spilled out of containers and eventually made its way to the Detroit River. Plaintiff received a one-day suspension for his involvement in the tar spill.

Plaintiff applied for rehire with DTE in August 2004. He was interviewed by Defendant Gary Gross in September 2004. During the interview, Plaintiff expressed his belief to Gross that Gross' planned changes to the by-products area where Plaintiff worked "wouldn't work." Gross consulted with Defendants Bill Wetzel, Tom Jere, and Bill Becken in deciding whether to rehire Plaintiff. Despite his experience, the decision was made not to rehire Plaintiff, allegedly based on his attitude, his prior dealings with supervisors, and the recent tar spill.

In October 2004, Plaintiff wrote a summary of his conversations with various supervisors regarding being rehired by DTE that range from September 2, 2004 to October 4, 2004. He titled the summary "My Story" and supplied his union with a copy.

On April 3, 2006, Plaintiff filed a Complaint. An Amended Complaint was filed February 28, 2007, alleging: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and (2) age discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). Defendants filed the instant Motion for summary judgment on May 31, 2007.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.  ANALYSIS

As an initial matter, Plaintiff agrees to the dismissal of Defendant Chris Cecotte. [Response, p.1]. The remaining Defendants are DTE Coke Operations, LLC; Gary Gross; Bill Wetzel; Tom Jere; and Bill Becken.

Plaintiff alleges age discrimination in violation of ADEA, 29 U.S.C. § 621; and ELCRA, MCL § 37.2101. The analysis is the same between the federal and state claims. *Stockman v. Oakcrest Dental Center, P.C.,* 480 F.3d 791, 800 (6th Cir. 2007); and *Featherly v. Teledyne Industries, Inc.*, 194 Mich.App. 352, 357-358 (Mich.App. 1992). Under the ADEA and ELCRA, an employer may not fail to hire an individual because of the individual's age. "A plaintiff has the burden of proving that the discrimination was intentional." *Stockman*, 480 F.3d at 800. "An

employee may establish a claim by offering either direct or circumstantial evidence of age discrimination." *Id*. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).

      A.      **Does Plaintiff Establish a Claim for Age Discrimination?**

Plaintiff asserts a "mixed motive" discrimination claim. "In *Price Waterhouse v. Hopkins*, the Supreme Court announced a burden-shifting framework for cases where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives." *Wexler*, 317 F.3d at 571 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989)). It is unclear whether the burden shifting framework still applies in light of subsequent legislative action and Supreme Court precedent. The Sixth Circuit recently stated that "to succeed on a mixed-motive claim, the plaintiff must adduce evidence that the protected characteristic "was *a motivating factor*" in the employer's adverse employment decision...[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was a victim of intentional discrimination...the ultimate question at summary judgment on a mixed-motive case is 'whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was *a motivating factor* in the defendant's adverse employment action against the plaintiff." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 712-713 (6th Cir. 2006)(emphasis original).

4

Plaintiff argues that there is sufficient direct evidence of age discrimination to withstand Defendants' Motion for summary judgment. Plaintiff argues that a statement made by the plant manager, Defendant Gross, is sufficient direct evidence to create a genuine issue of material fact:

> Q. Did you ask Mr. Gross why haven't I been offered a job?
>
> A. Yes, sir.
>
> Q. What did he say?
>
> A. Well, he reached over with his right hand and picked up the new contract and he stated to me: This new contract was written with younger employees in mind. We figure you senior employees would stay with U.S. Steel and get other jobs throughout the plant.

[Motion, Exhibit 1, pp.112-113]. In addition, Plaintiff contends that Gross' statement is consistent with "the other Defendants' stereotypical perception that the Plaintiff could not be hired because he could not adapt to change due to his age." [Response, p.6]. As evidence of the alleged stereotype, Plaintiff directs the court to statements allegedly made by Defendants Wetzel and Jere:

> Q. Did Mr. Wetzel ever say anything to you that you believe indicates age bias?
>
> A. Yes.
>
> Q. What?
>
> A. I believe when I first went up there to have a talk with him I asked him why myself, Miller, and Fairchild were not being offered jobs, and he stated to be that he didn't believe we could make the changes that they were going to require of us.
>
> Q. Why do you think that demonstrates age bias by Mr. Wetzel?
>
> A. Well, it's basically you can't teach an old dog new tricks.

5

>
> Q. That's your inference though, isn't that, Mr. Wetzel never said that?
>
> * * *
>
> A. It's my understanding that that's what he was referring to.

[Motion, Exhibit 1, pp.191-192].

> Q. Okay. Did Tom Jere ever say anything to you regarding your job application that you think demonstrates age bias?
>
> A. Well, he stated that I was knowledgeable, I was experienced, but that I just wouldn't be able to make these changes.
>
> Q. Why do you believe that demonstrates age bias?
>
> A. It's very simple. He's telling me, once again, can't teach an old dog new tricks.
>
> Q. But Mr. Jere didn't use those words, did he?
>
> A. He didn't have to, sir.
>
> Q. Is that your inference of Mr. Jere's comment?
>
> A. Yes, sir.
>
> Q. Did Mr. Jere ever say anything to you about your age?
>
> A. No, sir.

[Motion, Exhibit 1, p.208]. Wetzel was the by-products manager and Jere was the coke plant manager. It is undisputed that following his interview with Plaintiff, Gross sought out the input of Wetzel and Jere in deciding whether to hire Plaintiff. [Motion, p.4].

Defendant argues that Gross' statement regarding the new union contract being written with younger employees in mind refers to the differences in insurance and retirement benefits, not to a bias toward older workers. Plaintiff concedes he and Gross discussed the fact that under the new contract the insurance and retirement benefits would not be as good. [Motion, Exhibit 1,

p.113]. However, it is unclear whether Gross made clear that was what he was referring to when he made his statement regarding younger employees. *Id*. Nonetheless, Defendants argue the solitary comment by Gross is too vague and unrelated to the decision process to constitute direct evidence of age discrimination in the decision not to rehire Plaintiff. With respect to the statements made by Wetzel and Jere, Defendants contend the statements make no reference to age, let alone Plaintiff's age specifically. Defendants assert that the age bias attributed to the statements was merely Plaintiff's perception.

Plaintiff directs the court to *Wexler*, 317 F.3d 564. In *Wexler*, the Sixth Circuit held that the plaintiff created a genuine issue of fact, based on direct evidence, of whether the defendant held stereotypical views about the capabilities of older workers that influenced its employment action with respect to the plaintiff. In *Wexler*, the statements the court considered were summarized as:

> (1) Schiffman's comment, during the meeting in which Wexler was demoted, "that you're 60 years old, aren't you Don? ...Well, we both have been in the business 117 years. You don't need the aggravation, stress of management problems, customer problems, taking care of all these salespeople's problems that keep calling you on the phone all day every day;"
>
> (2) Lively's statement, at that same meeting, that White's was "going to really be grinding their managers in the future," making them do tasks that he did not think Wexler would want to be doing;
>
> (3) Schiffman's comment during a telephone conversation with Wexler on June 16, 1997, when he said that he would explain to the other employees why Wexler would no longer be the manager by mentioning "that you're getting older, although not as old as I am;"
>
> (4) Schiffman's statement during his announcement of the demotion that Wexler had come to him and said: "I've been in my [sic] management for a bunch of years, and I'm not sure what I want to do. Maybe I should just be worrying about my own customers and not everyone else's customers. This is getting to be

7

>
> tiring;"
>
> (5) Schiffman's repeated references, during the same speech, to the youth of Wexler's replacement;
>
> (6) Numerous prior references that Lively made about Wexler's age, including comments such as "a bearded, grumpy old man," "pops," and "old man."

*Wexler*, 317 F.3d at 570-571. The court found that a factfinder could reasonably conclude "that the above-listed statements evince a discriminatory intent...[t]hey were made by a decisionmaker, indicated a belief that a person's capabilities as a store manager diminish with age, and the first five were directed at Wexler at the very time he was being demoted." *Id*. at 572. Based on the statements, the court found that an inference could be found that "both the president and the executive vice-president of White's adhered to the stereotype that an older manager cannot perform in a high-stress management position where the company would be pushing him to work harder and do more." *Id.* "The eradication of such stigmatizing beliefs is precisely what the ADEA was intended to target." *Id*.

In reaching its decision, the *Wexler* court relied on the United States Supreme Court case, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In *Price Waterhouse*, the plaintiff, a woman, was denied a partnership position after the existing partners offered their input. The Sixth Circuit summarized the case by stating "[r]emarks made by several partners, when considered in the context of common stereotypes about women, indicated that at least some of the voting partners' actions were motivated by the plaintiff's gender. For example, she was criticized for 'unfeminine' characteristics such as her clothing, the use of profanity, and her abrasive style. Although the factual bases of these criticisms were not challenged by the plaintiff, it was the veiled connection between these perceived character traits and her gender that led a majority of

the Court to conclude that there was sufficient evidence that gender discrimination was a motivating factor in her being denied a promotion to partner." *Wexler*, 317 F.3d at 571 (citing *Price Waterhouse*, 490 U.S. at 234-236, 251). "Criticism of an employee's performance, even if true, which is linked to stereotypes associated with a plaintiff's membership in a protected class is therefore squarely within the rubric of a mixed-motive analysis." *Id*. "The association of these stigmatizing beliefs with an adverse employment decision creates a genuine issue of material fact as to whether the employer was motivated, at least in part, by discriminatory intent based on those stereotypes." *Id*. at 572.

  The statements offered by Plaintiff are sufficient to constitute direct evidence of discrimination. Accepting Plaintiff's evidence as true, when asked by Plaintiff why he had not been offered a job, Gross told Plaintiff that the new contract was "written with younger employees in mind" and that he believed the "senior workers," including Plaintiff, would stay with U.S. Steel. [Motion, Exhibit 1, pp.112-113]. Defendant contends this statement referred to the more favorable retirement benefits and insurance at U.S. Steel, while that may have been Gross' intent in making the statement, that is not what he said according to Plaintiff. Gross' statement is explicitly clear, as relayed by Plaintiff, that Plaintiff was not made an offer because the contract was written with younger workers in mind. Although Defendant argues that this statement did not refer to Plaintiff's age, Gross clearly did not consider Plaintiff one of the "younger employees" the contract was written for because he stated his belief that he figured "you senior employees" would stay with U.S. Steel. Gross was talking to Plaintiff when he made the statement; thus, "you" referred to Plaintiff as a "senior employee," rather than a "younger employee." In addition, Defendant argues that Gross' statement did not refer to the decision not

9

to hire Plaintiff, however, the statement was allegedly made as a direct response to the question of why Plaintiff was not rehired. Gross' statement that Plaintiff was not made an offer because the new contract was written with younger employees in mind, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Stockman*, 480 F.3d at 800. Accordingly, Defendants are not entitled to summary judgment.

Plaintiff also relies on the statements made by managers Wetzel and Jere, in addition to Gross, to establish a mixed-motive claim. It is undisputed that after interviewing Plaintiff, Gross sought input from Wetzel and Jere. [Motion, p.4]. According to Plaintiff, Wetzel, after being asked why Plaintiff and two other older workers were not being hired, stated that he "did not believe [the employees] could make the changes they were going to require of [them.]" [Motion, Exhibit 1, p.191]. Jere allegedly stated that while Plaintiff was experienced and knowledgeable, he just would not be able to make the changes. [Motion, Exhibit 1, p.208]. It is undisputed that Gross planned to change the work responsibilities in Plaintiff's work area. [Motion, p.1]. It is also undisputed that Gross told Plaintiff that he was not making Plaintiff an offer because Jere and Wetzel did not want him there. [Motion, p.8].

The statements by Wetzel and Jere are circumstantial evidence that Defendants adhered to a stereotype that an older employee cannot adapt to new changes. See *Wexler*, 317 F.3d at 572. A Plaintiff can withstand a summary judgment motion on a mixed-motive case when circumstantial evidence is presented, from which a reasonable jury could logically infer that a protected characteristic was *a* motivating factor in the defendant's adverse employment action against the plaintiff. *Wright*, 455 F.3d at 713. Assuming this circumstantial evidence supports a claim, the question left open by the *Wright* court is whether a plaintiff establishing a mixed-

motive case based on circumstantial evidence must satisfy a burden shifting framework. Because the court finds above that Plaintiff establishes a claim for intentional discrimination based on Gross' statement, the court does not reach that issue.

Additionally, because Plaintiff establishes a claim of age discrimination based on direct evidence, the court does not reach the issue of whether Plaintiff also establishes a claim for discrimination using circumstantial evidence under the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), analysis.

**B.     Individual Defendants**

As noted above, Plaintiff agrees to dismiss Defendant Chris Cecotte. [Response, p.1].

**1.     ADEA**

Defendants argue that Plaintiff cannot establish a claim against the individual Defendants under ADEA because there is no individual liability under the ADEA.

Individual liability is precluded under the ADEA. In *Wathen v. General Electric Company*, 115 F.3d 400 (6th Cir. 1997), the Sixth Circuit held that individuals or supervisors who do not qualify as an employer under Title VII, cannot be subject to Title VII liability. As Plaintiff points out, *Wathen* was a Title VII case and not an ADEA case. However, in its decision, the Sixth Circuit stated "[t]he issue of an employee/supervisor's individual liability has been raised not only within the context of Title VII but also in its close counterparts [including ADEA]...[t]he liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue; they limit liability to the employer and use the term "agent" in defining employer." *Wathen*, 115 F.3d at 404 n.6 (citations omitted). "Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way, an analysis based on Title VII,

11

the ADEA, and the ADA case law is appropriate." *Id*. The Sixth Circuit in *Wathen*, cited two cases with approval that explicitly found no individual liability under the ADEA. See *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995); and *Miller v. Maxwell's Intern. Inc*., 991 F.2d 583, 588 (9th Cir. 1993). Also, in *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999)(emphasis added), the court noted that "numerous courts, including this one, have held that supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII *and its sister civil rights statutes*, and accordingly cannot be held personally liable for discrimination." The court also cited *Smith v. Lomax, supra*.

Therefore, Defendants Gary Gross; Bill Wetzel; Tom Jere; Chris Cecotte; and Bill Becken are entitled to summary judgment on Plaintiff's claim of age discrimination under the ADEA.

    **2.**    **ELCRA**

With respect to the ELCRA, Defendants concede that the ELCRA permits individual liability for individuals who act as "agents" of the employer. However, Defendants contend that the individual Defendants, with the exception of Gross, did not have the authority to hire Plaintiff, and should be dismissed.

The Michigan Supreme Court held in *Elezovic v. Ford Motor Company*, 472 Mich. 408, 431 (2005), that "because employers can be held liable under the [ELCRA], and because agents are considered employers, agents can be held liable, as individuals, under the [ELCRA]." In *Elezovic v. Bennett*, 274 Mich.App. 1, 10 (Mich.App. 2007), the court held that one becomes an "agent" for purposes of the ELCRA, through "delegation of general supervisory power and authority." "Specifically, persons to whom an employing entity delegates supervisory power and

authority to act on its behalf are agents, as distinguished from coemployees, subordinates, or coworkers who do not have supervisory powers or authority, for purposes of the [ELCRA]." *Id*.

The question in this case is whether Defendants Jere, Wetzel, and Becken had "supervisory powers or authority to act" on behalf of Defendant DTE Coke Operations, with respect to the failure to hire Plaintiff. Plaintiff does not allege that anyone other than Gross had the authority to rehire him. Rather, the undisputed fact is that Jere, Wetzel and Becken gave their input to Gross, on his request, regarding whether Plaintiff should be rehired. [Motion, p.4]. However, the only discriminatory act is the failure to rehire Plaintiff, allegedly based, at least in part, on his age. Thus, Jere, Wetzel and Becken were not "agents" for purposes of the ELCRA, because they did not have the authority to act in that decision. "Agents are persons to whom the employing agency delegates supervisory power and authority over subordinates...[a]n agent can be held directly and individually liable *if he engaged in discriminatory behavior in violation of the [ELCRA]* while acting in his capacity as the victim's employer." *Elezovic*, 274 Mich.App. At 15 (emphasis added). Jere, Wetzel and Beckens did not make any explicitly discriminatory remarks. To the extent they made circumstantially discriminatory remarks, it is not a violation of the ELCRA to merely make such remarks. This is distinguishable from the supervisor in *Elezovic,* who could be held liable because he made sexual harassing remarks to the plaintiff. Making such remarks in and of itself, where they created a hostile environment, violates the ELCRA.

Accordingly, Defendants Bill Wetzel; Tom Jere; Chris Cecotte; and Bill Becken are entitled to summary judgment on Plaintiff's claim of age discrimination under the ELCRA.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. The Motion is granted with respect to Defendants Bill Wetzel; Tom Jere; Chris Cecotte; and Bill Becken. Defendant Gary Gross is entitled to summary judgment on the ADEA claim only. The Motion is denied with respect to Defendant DTE Coke Operations, LLC; and Defendant Gary Gross on the ELCRA claim.

**IT IS SO ORDERED.**

> **S/Sean F. Cox**
> Sean F. Cox
> United States District Judge

**Dated: September 27, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2007, by electronic and/or ordinary mail.**

> **S/Jennifer Hernandez**
> Case Manager